## No. 12,658.

### Joseph Byrne vs. Amedee N. Hebert.

### Syllabus.

1. To plaintiff's petitory action defendant answered he held the land under lease from the heirs of Bogart, but did not disclose their names or domicile. The heirs were not made parties. There was judgment awarding plaintiff, on his showing of title, possession *as against the lessee*, but rejecting his demand "in all other respects." Having prayed to be declared the owner this judgment disallowed his demand of ownership.

HELD: As he sued for the ownership of the land and for possession thereof as an accessory to such ownership, there is error in the judgment which while awarding him possession, rejects his claim of ownership.

2. The rejection of his plea of ownership left nothing to predicate the decree of possession upon.

3. The court will, in the exercise of a sound discretion, remand a case. when, in its judgment, the ends of justice require it.

ON APPEAL from the Fourteenth Judicial District Court for the Parish of Iberville. *Talbot, J.*

---

*Hebert & Hebert* for Plaintiff and Appellee.

---

*R. N. Sims, Fenner, Henderson & Fenner* (of Counsel), for Defendant and Appellant.

---

Argued and submitted February 10, 1898.

Opinon handed down March 21, 1898.

Rehearing granted May 16, 1898.

Argued and submitted on Rehearing December 20,1898.

Opinion handed down March 7th, 1899.

The opinion of the court on Rehearing was delivered by BLANCH-
ARD, J.

---

The opinion of the court was delivered by

NICHOLLS, C. J.	The plaintiff in his petition filed March 4th, 1897,
alleged that he was the owner of lots 3, 4, 5 and 6 of Section 4, in
township 9, South of Range 1, E. S. D. E. Miss. River, containing
one hundred and forty-nine 64-100 acres, by virtue of an entry on said
lots made under *Section No. 2290*, Revised Statutes of the United
States, on August 14th, 1894, as would appear by the receiver's certifi-
cate of said entry annexed to and made part of his petition.

That immediately after his said entry he went upon the lands
entered and began to cultivate and improve them; that on the 15th
day of June, 1895, in the suit of Edward Bryant, agent of the Heirs of
Wilhelmus Bogarts vs. Joseph Byrne, *et al.*, an injunction issued to
him, commanding and restraining and prohibiting him from any
further use or cultivation of said lands; that on the 3rd of August,
1895, the said injunction was dissolved by a judgment of the District
Court for Iberville Parish, as would appear from the proceedings in
said suit, annexed to and made part of the petition.

That from the date of the injunction above mentioned (June 15th,
1895), up to the date of the filing of his petition, notwithstanding the
dissolution of said injunction, defendant claiming to be the lessee of
the heirs of Bogarts had been in constant possession of his said pro-
perty; that he had made demand for the possession of the same in
vain.	That he desired to be put in possession of his property by judg-
ment of the court by the sheriff of the parish of Iberville, and to that
end he brought suit against the defendant, the lessee aforesaid.

That the possession of defendant of his property had been in bad
faith and without color of authority or title; that he should be con-
demned to pay petitioner rent at the rate of five dollars an acre *per
annum* for his property from June 15th, 1895, until the termination
of the suit, with legal interest from the date of judgment.	The
prayer of his petition was that there be judgment in his favor against
defendant, decreeing him to be the owner of lots Nos. 3, 4, 5 and 6,
aforesaid, and commanding the sheriff of the parish of Iberville to
put petitioner in possession of said property; that he have further
judgment against defendant for rent due him as alleged in the peti-
tion.

Defendant filed several exceptions. One was that the allegations of plaintiff's petition did not disclose any cause of action against defendant; a second, that plaintiff was absolutely without right to prosecute this suit or stand in judgment for this, that the pretended certificate of entry declared on by plaintiff was the subject of contest and controversy in the land department of the United States and said pretended entry had been suspended and was inoperative. That said contest was being prosecuted by the State of Louisiana and plaintiff was a party thereto.

Both of these exceptions were overruled.

Defendant prayed oyer of the receiver's certificate of entry declared upon by plaintiff, alleging that it had not been filed, although averred to have been annexed to the petition.

The certificate was produced and filed. It was as follows:

"Receiver's Receipt No. 15,864—Application No. 15,864.

"*Homestead.*

"Receiver's Office, New Orleans, August 14th, 1894.

"Received of Joseph Byrne the sum of thirteen dollars, seventy-five cents, being the amount of fee and compensation of register and receiver for the entry of lots 3, 4, 5 and 6 of section 4, in township 9, South of Range 1, E. S. D. E. Mississippi River, under Section No. 2290, Revised Statutes of the United States.

(Signed)                              CHARLES P. JOHNSTON,
"$13.75.    149 64-100 acres.                    *Receiver.*"
"*Note.*

"It is required of the homestead settler that he shall reside upon and cultivate the land embraced in his homestead entry for a period of five years from the time of filing the affidavit, being also the date of entry. An abandonment of the land for more than six months works a forfeiture of the claim. Further, within two years from the expiration of the said five years, he must file proof of his actual settlement and cultivation, failing to do which his entry will be cancelled. If the settler does not wish to remain five years on his tract he can at any time after fourteen months, pay for it with cash or land warrants, upon making proof of settlement and of residence and cultivation from date of filing affidavit to the time of payment."

Defendant filed an answer under reservation of his exceptions. He first pleaded the general issue. Further answering, he denied that plaintiff was the owner of the lands described in the petition—he

averred that plaintiff had no title thereto of any kind whatsoever, and that the alleged certificate of entry was a mere receipt for fees and commissions under Section 2290 of the Revised Statutes of the United States.

He denied that plaintiff was ever the *bona fide* possessor of said lands which form and have since fifty years or more, formed a part of the plantation now owned by the Bogart Heirs from whom respondent holds under a lease—he averred that said lands were and had been since fifty years or more, within the enclosures and well established boundaries of said plantation and in the quiet, peaceable and uninterrupted possession of respondent's lessees and their authors as owners; that more than a year prior to the attempt of plaintiff to take unlawful possession of said lands, respondent had been in the quiet, peaceable and uninterrupted possession thereof as lessee of said plantation, and that plaintiff's attempt to cross said boundaries and enclosures was an act of wilful and malicious trespass. That the pretended receipt was not a "muniment of title," and conveyed no title sufficient to support a petitory action; that said pretended receipt issued in violation of law and that the same was obtained by plaintiff by means of false representations in his application for a homestead entry; that plaintiff was absolutely without any legal right or capacity to prosecute or maintain this suit and that respondent was entitled to be quieted in his possession of said lands forming part of said plantation as lessee of the same. That the land in controversy was worth more than two thousand dollars.

He prayed that plaintiff's demand be rejected and that there be judgment quieting him in his possession as lessee of said owners, with costs.

The District Court rendered judgment "in favor of the plaintiff and against the defendant, giving the plaintiff, Byrne, as against the defendant, Hebert, possession of lots 3, 4, 5 and 6, of Section 4, in township 9, South of Range 1, E. S. D. E. Mississippi River, and commnading that he be placed in possession of said property by the sheriff of this parish." It was further ordered that "in all other respects, the demand of plaintiff be rejected."

Defendant appealed.

In the Supreme Court defendant pleaded as an exception, the prescription of one year in bar of the action of the plaintiff for the possession of the property. He also contingently prayed for the remand-

ing of the case. Plaintiff answered the appeal praying that the judgment be amended so as to allow him the rents as prayed for in his petition; he prayed that in all other respects the judgment be affirmed.

The plaintiff asks to be recognized and decreed to be the owner of the property described in his petition and to be placed in possession of the same.

The evidence in this case shows that the property involved in this litigation has been continuously in the possession of the authors of the heirs of Bogart and of the heirs of Bogart, and of their lessees for over forty years, a period *long antedating the homestead certificate of entry on which the plaintiff has declared* with the exception of a slight disturbance of their possession by the plaintiff in this suit just after he received the certificate mentioned. As soon as this act of disturbance occurred one Edward Bryant, claiming to be the agent of the heirs of Bogart, applied for and on the 10th of June, 1895, obtained an order for an injunction, which injunction issued on the 15th of that month, "commanding plaintiff to cease disturbing the heirs of Bogart in their real and actual possession of the land." This injunction was dissolved on the 31st of August, 1895, on motion of defendant in injunction, but solely on the ground *that the agency of Bryant had not been established.* Notwithstanding this dissolution, Byrne never attempted either to take or to claim possession of the property until the present suit was instituted on March 4h, 1897.

The only evidence introduced by the plaintiff was the homestead certificate of date of the 14th August, 1894, testimony going to show the entering upon the property by plaintiff shortly after he had obtained the same, which action was enjoined by Bryant and the injunction proceedings themselves.

The evidence shows that the defendant, Hebert, was in possession of the property as lessee of the heirs of Bogart at that time, and that he had been in possession as such, anterior to the date of the homestead certificate.

The court thought itself authorized under this evidence in decreeing that plaintiff should be placed in possession of the property, but though sustaining his demand to that effect, it, *"in other respects rejected it."* Plaintiff denies that by this decree his ownership of the property was negatived and insists that the only reason why the judgment was framed as it was, was because the defendant had been

shown to be the lessee of the heirs of Bogart, and by reason of that fact, the court was of opinion that the question of title could not be passed upon contradictorily with the defendant, but that *the question of possession* could under the decisions of this court, in Plummer vs. Schlatre, 4th Rob., 29; Dreux vs. Kennedy et al., 12th Rob., 489; King vs. Fish, 4th N. S. 391; Fuselier vs. Hennen, 5 N. S. 71; and Bayou-jon's Heirs vs. Criswell, 5th N. S., 232, and Young vs. Chamberlin, 15th Ann. 454. He contends that the judgment of the court on the question of the possession was correct, asserting that the evidence established that the defendant and his lessor were *trespassers* upon the public lands of the *United States* and that as against either the lessor or the lessee, plaintiff had the *"right of possession"* at any time, under his homestead certificate.

*Article 43* of the Code of Practice declares that "the petitory action or one by which real property or any immovable right to which such property may be subjected, is claimed, must be brought against the person who is in the actual possession of the immovable, even if the person having the possession be only the farmer or lessee. But if the farmer or lessee of a real estate be sued for that cause of action he must declare to the plaintiff the name and the residence of his lessor, who shall be made a party to the suit if he reside in the State or is represented therein, and who must defend it in the place of the tenant who shall be discharged from the suit."

Article 2704 of the Civil Code, referring to acts by which the possession of a lessee is disturbed, says: "If the persons by whom those acts of disturbance have been committed pretend to have a right to the thing leased, or if the lessee be cited to appear before a court of justice to answer to the complaint of the person thus claiming the whole or a part of the thing leased or claiming some servitude on the same, he shall call the lessor in warranty and shall be dismissed from this suit if he wishes it by naming the person under whose rights he possesses."

Plaintiff maintains that although the defendant mentioned the "Bogart Heirs" as being his lessors, he did *not give their names* nor *residences,* and did not ask that they be cited in warranty or made parties to the suit—that under such circumstances defendant in the actual possession of the property, was not entitled to be dismissed from the suit, but that plaintiff was entitled to carry it on to judg-

ment contradictorily with him, certainly, at least, as to the issue of the right of possession.

Defendant did not mention the names of the different heirs of Bogart, nor did he give the places of their residences. Whether he knew himself who they were or where they lived, does not appear. He certainly must have known the name or names of the person or persons who acted for the lessors with respect to the lease. Plaintiff himself in his petition refers to lessors as "heirs of Wilhemus Bogart."

Defendant did not ask to have his lessors made parties or cited in warranty; nor did he ask to be dismissed from the suit.

We do not understand him to claim that the suit should be abated by reason of the present situation of affairs, but to contend that no judgment should or could be rendered against him as matters now stand and that should he be wrong in that respect the judgment as rendered was not warranted.

Plaintiff claims to be the owner of the property described in his petition and to be placed in possession thereof. The right of possession asserted is simply that which is the incident and accomplishment of a right or a claimed right of ownership. Plaintiff's pleadings contain none of the allegations which would authorize the right of possession to be taken up and disposed of as a substantive issue independently of the question of title. The petition viewed from the standpoint of the action being a possessory action proper under the Code of Practice could not be made the basis of a judgment in a suit of that character and would fall under an attack made upon it through an exception of no cause of action.

The *syllabus* in Plummer vs. Schlatre, 4th Rob. 29, cited by plaintiff, declares that Article 43 of the Code of Practice "applies only when the lessor or owner of the property sued for resides in the State, or being absent, is represented therein; if the lessor reside out of the State and is not represented therein the lessee must defend the suit in his absence."

There is nothing to show in the case at bar that the heirs of Bogart are absentees from the State. The particular state of facts under which a lessee is declared by that decision authorized to defend a petitory action on behalf of his lessor does not appear. In Plummer vs. Schlatre defendant's pleadings were of the vaguest character. Made defendant in a petitory action in which a decree for the ownership and possession of a slave in his possession was demanded,

Schlatre in his answer declared that "he was not her owner, but held. her as the property of one Wilkinson who was an absentee, and that. he had her in trust for him. That Wilkinson was bound to defend. him in the peaceable possession of the property; that it was necessary that an attorney be appointed to represent him in the defense of the· suit. He prayed that Wilkinson be called in warranty; that an attorney be appointed to represent him, and should a judgment be rend-- ered against defendant for any damages or costs, that the same judgment be rendered in his favor against Wilkinson, etc." Plaintiff excepted to the call in warranty on the ground that defendant did not show himself entitled to it and that such a call could not be made after a judgment by default had been taken.

The court said that the only question before it resulted from plain-- tiff's exception to defendant's attempt to call in warranty the person whom he declared to be the owner of the slave sued for—that he did' not show in his answer how or under what precarious title the slave· was put in his possession, nor did he inform the court whether he held the slave as the lessee, or as the agent of the owner. That that was undoubtedly insufficient. That were the provisions of Article 43 of the Code of Practice, and Article 2674 of the Civil Code to be held' applicable to the lessee of a slave entitling him to be dismissed from· the suit, if he wished it, by naming the person under whose right he possessed, the looseness of defendant's allegations unsupported by his oath or any other evidence, would deprive him of the right of calling· the owner in warranty.

We think it evident that the court did not consider that the defense was made in good faith, or that defendant was not, as the party actually in possession, really the one against whom plaintiff could' rightfully have directed his proceedings. It is true that the court in the course of its opinion stated that by reason of the terms of the law· having declared that if the lessor resided in the State, or be represented therein, he should be made a party to the suit, it resulted by· implication that if the lessor resided out of the State and was not: represented therein, the lessee should take upon himself to defend' the suit in the absence of the owner, but that statement was not called' for by the necessities of the case and was an *obiter dictum* which has not since been followed. The court affirmed the judgment rendered in the case which was for plaintiff, *decreeing him to be the owner of the property*. In Young vs. Chamberlin, 15th Ann., 454, cited by plain--

tiff, in which the defendant was the lessee of one Hollister, who was *a resident of the State of Michigan,* the case was tried as between the plaintiff and the lessee alone, and the court expressly declared that the lessee was *without capacity to stand in judgment as to the question of title.*

As a matter of course a lessee may so frame his pleadings and so control the evidence advanced under them when called into a suit as defendant in a petitory action, as to warrant in the particular case a judgment for the property, but that is the result of a matter of fact, not of law.

The argument *a contrario* is not a very safe one to be followed. We know of no law authorizing a lessee as such to stand in judgment on a question of title on behalf of his lessor, whether the latter be a resident of the State or an absentee; in either case he should be made a party to the suit—if present or represented he should be made a party either personally or through his authorized representative—if absent, by a curator *ad hoc,* under Articles 116 and 963 of the Code of Practice.

Plaintiff contends that although the court in Young vs. Chamberlin (15 Ann. 454) declares that the lessee cannot stand in judgment for his lessor on a question of title, it holds that the "right of possession" of the property can be passed on and determined *between them*—and that is all that is needed for the purposes of the present suit. The *plaintiff in Young vs. Chamberlin was non-suited,* so that that decision throws little light upon this subject. There may be cases so circumstanced as to facts as to authorize a decree as to the right of possession, but they should be exceptional. Viewed exclusively from the standpoint of matters between the plaintiff and a lessee there might be no particular objection to be urged against the parties going to trial on that issue, if they thought proper so to do, but when we come to consider the effect of such a course upon the rights of the ˉlessor, things take on an entirely different form. A change of the possession of the property from a lessee to a plaintiff in such a suit, operated through the execution of a judgment, to which the lessor was no party, carrying with it as a result the necessity of the lessor's being forced to resort to a petitory action to regain possession, would open wide the door to collusion, fraud and injury. A lessor who had been in possession of property for years, as owner, and who would be entitled as against any one advancing adverse claims to force and exact

the clearest proof of the rightfulness of such claims, would find himself suddenly, without any fault of his, called upon to take the position of plaintiff instead of a defendant in a petitory action and the whole burden of proof required in such an action shifted on to him. On the other hand, a plaintiff claiming a legal right, is entitled to find a defendant against whom he should proceed and a defendant by obstinately refusing to disclose the name or residence of his lessor, might place him at defiance or throw unnecessary and unjustifiable obstacles and delays in the way of the enforcement of rights.

Discussing the question of possession even simply as between a plaintiff and a lessee, the court in Young vs. Chamberlin, said:

"The possesion of a lessee is the possession of his lessor and before his possession can be disturbed *in a petitory action,* plaintiff must show a good and perfect title in himself as required by Article 44 of the Code of Practice, for if the lessor had been made a party to the suit, he might have shown a title in himself paramount to any title exhibited by the plaintiff *short of a good and perfect title against the whole world and thereby have protected* his possession through his lessee. * * * The plaintiff in a petitory action is *bound* even against a *naked possessor* to produce a title *anterior in date to the possession of the defendant,* in order to establish ownership in himself and to repel the ownership in the defendant resulting from his possession. (C. P. 44, 8 La. 246.) If the defendants be regarded as naked possessors the plaintiff has failed in his evidence to make out his case against them because the allegations of his petition which as judicial admissions conclude him, establish the fact that his title *was not anterior in date,* but *subsequent, to the possession of the defendants,* because at the *date* of her *title the defendants were in possession of the land,* and there is no evidence of his vendor's title prior to that date which can be considered as affecting the lessor's right of possession through his lessee."

Applying the rule here announced, how does this case stand as between plaintiff and defendant?

Plaintiff starts out with the assumption that defendant and his lessor are naked *trespassers* upon the property, though the defendant himself was in possession long anterior to the date of the homestead entry relied on by the plaintiff, and the lessors of the defendant and their authors are shown by evidence to have been in the open possession of the property as owners, as part of their plantation, for over

.thirty years before that date. Granting that plaintiff would have been .entitled, under a homestead entry, to have taken possession of the property entered even as against parties holding possession at that time and long before, the allegations of his petition show that he has not been in possession, nor has he claimed to have the right of possession, nor has he sought to be placed in possession since August 31st, 1895, though he was perfectly free to act, and the very certificate on which .he declares, states that "an abandonment of the land for more than .six months works a forfeiture of the claim."

Independently of this, we are by no means prepared to accept as true the proposition that the mere permission given by ministerial .officers of the land department to some particular person to make a .homestead entry of certain lands, carries with it, as a consequence, that parties who are at the date of the entry in possession of that property, as owners, and had been in possession of the same for years before, should be held by that fact to be trespassers. It was stated in .argument in this case, and we can make use of the statement by way of illustration, though not for action, that the lands which form the .subject of this litigation were entered many years ago by the owners of the front or first concession under the law authorizing them so to do; that subsequent to this entry the same was cancelled, not absolutely, but because it was supposed to conflict with the Houmas grant —that plaintiff finding the entry cancelled, applied to the ministerial .officers of the Government to have the land entered under the homestead laws of the United States, and was permitted to do so. That plaintiff found himself confronted with a claim made on the part of the State of Louisiana and the Pontchartrain Levee District holding under the State, that the latter had become the owner of the property under the "swamp land" act; that thereupon, plaintiff instituted proceedings before the local land officers in New Orleans to have the land declared, contradictorily with the State and the Land District, to have been properly entered by him under the homestead law—that being unsuccessful before them, he appealed to the commissioner of the Land Office at Washington, by whom the decision appealed from was reversed; that from the decision the State and the Land District appealed to the Secretary of the Interior, and that the whole matter rests in suspense in the Interior Department at the present time. That throughout all this priod the front owners who entered the land originally, and their assigns, have remained constantly in possession.

Under this condition of affairs can it be said that either as *to the United States or as to the plaintiff,* or as to the State, the parties in possession are to be considered as naked trespassers. We think not. In the first place, it by no means follows that, because an entry of public land was cancelled by reason of its supposed conflict with some particular grant, the entry was to stand cancelled absolutely and generally as to the world. It might well be that the entry should stand cancelled in so far as it really conflicted with the grant, and yet hold good if it did not so conflict. The cancellation might be held to extend no further than for the benefit of the parties holding the Houmas grant and the permission granted to homestead entrymen by reason of the cancellation might be wholly unauthorized and illegal. Marsh vs. Gonsoulin, 16th La., 84, Beridon vs. Barbin, 13th A. 458. If, in point of fact, the cancellation of the entry caused the property to fall legally into the ownership of the State under the swamp land act, the United States and its officials would have had no power to permit the land to be homesteaded to the prejudice of the rights of the State, and plaintiff would take nothing by his entry. That being true, defendant's possession might be subject to attack from the State, but not from the plaintiff. Again in a suit between the State and the Heirs of Bogart, the latter might be able to successfully hold that their original entry would stand good as against all parties other than the Houmas grantees, under whom the State does not pretend to hold. We mention these various pretensions simply to show that it by no manner of means follows that because the plaintiff was authorized by ministerial officers of the government to enter upon certain property for the purpose of ultimate acquisition of the same, the parties who were in actual possession of the property at that time should be taken to be trespassers, either as against the Government or as against the homestead entryman or the State.

We do not understand that the United States transfers property *ipso facto,* by and through a mere homestead entry. The entry is merely, as we understand, permissive of occupancy of unappropriated land, under a pledge or promise to convey the property on the later fulfillment of certain fixed conditions. We do not feel called on to discuss its character or the results flowing from the same at the present time. As matters stand, we do not think defendant was called upon to ascertain or advance the title of his lessors under penalty of eviction, but that he is authorized, under the state of facts disclosed

by the pleadings and the evidence, to stand, for the time being, upon his possession and that of his lessor. We do not think the evidence in the case justifies the judgment appealed from. Matters should be made to appear more certain and definite.

We find ourselves in presence of a case where there is reason to believe, or, where at least we are compelled to assume, that the lessors of the defendant have a claim of some kind upon the property not inferior to that which the plaintiff advances, and where a decision adverse to the defendant would seriously and vitally affect the rights of parties not before the court, and whose rights should be protected. (Bludworth vs. Hunter, 9 Rob. 257, 262.) We think, besides, that the defendant has an independent right of self protection to maintain him in his acquired possession.

We are of the opinion that the judgment appealed from should be, and it is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the cause be remanded to the District Court and reinstated on its docket and proceeded with according to law, with leave to the plaintiff to make the heirs of Wilhelmus Bogart parties defendants.

MR. JUSTICE BREAUX concurs in the decree.

JUSTICES MILLER and BLANCHARD dissent.

## ON REHEARING.

BLANCHARD, J. The judgment appealed from decreed to plaintiff the *right* of possession of the premises sued for, as against defendant lessee, who alone was cited, and directed that he be placed in possession.

As to all of the other demands of plaintiff, the same were rejected.

These other demands were, to be decreed *the owner* of the property, and to recover rent for the land at the rate of five dollars per acre *per annum* from June 15th, 1895, until given possession.

In the view we take of the case as the same is now before us, we pass no opinion upon the sufficiency or insufficiency of the showing of title made by plaintiff. But even upon the hypothesis of the sufficiency of this showing, the judgment of the lower court cannot stand.

How can plaintiff, suing for the ownership of land and for possession thereof, as an accessory to such ownership ,be awarded the possession while, in the same decree, his demand of ownership is rejected

outright? He is not entitled to possession unless his claim of ownership be recognized, and since the judgment under consideration rejected his plea of ownership, nothing was left to predicate the decree of possession upon.

Had the judgment, upon the assumption that plaintiff had made out his title, decreed him the ownership of the land so far as it could be done as against the lessee, who alone is a party defendant, and followed this up by decreeing him the right of possession as against such lessee, with reservation of the rights of the lessors and owners whose names had not been disclosed, and who were not parties to the suits, a different case would be presented, as to which plaintiff would, at least, be on firmer ground than he now is.

Plaintiff did not appeal from the judgment rejecting his demand of ownership. Neither has he *seasonably* filed in this court an answer to the appeal of defendant, praying amendment of the judgment in that respect. The only answer seasonably filed here was one praying that the judgment appealed from be so amended as to allow him the rents claimed in his petition, and this answer concludes with the prayer that "in all other respects the judgment of the lower court be affirmed with costs."

We thus find plaintiff in the attitude of asking that the judgment of the court *a qua*, rejecting his demand of ownership, be affirmed, and were we to grant this prayer it must necessarily and logically carry with it the reversal of that part of the judgment decreeing him the possession.

Rejecting his claim of ownership and withdrawing the possession awarded him by the court below, would be the loss of the case, as it now stands, entirely to him, and surely this is not what he would have us do.

It is, thus, apparent he is in no position to resist, as he has done on this rehearing, the reversal of the judgment appealed from and the remanding of the case.

This court will, in the exercise of a sound discretion, remand a case when, in its judgment, the ends of justice require it.

We think this such a case.

On behalf of defendant it should be remanded to enable the heirs of Bogart to be made parties defendant and contradictorily with whom plaintiff may litigate the questions herein raised.

36

On behalf of plaintiff it needs to be remanded on the grounds hereinbefore pointed out.

If the heirs of Bogart are present or legally represented in the State, they should, by supplemental petition, be made parties defend-. ant and cited to answer plaintiff's demand. If they be non-residents of the State and not properly represented here, then they should be cited through a *curator ad hoc*.

If the records of the Parish of Iberville do not disclose who these heirs are and their places of residence, and do not disclose whether they are represented in the State or not, and if represented, by whom, and plaintiff has not this information otherwise, it would be competent for him to rule defendant to declare the names and places of residence of those under whom he claims to hold, and should this proceeding fail to obtain the information necessary to make the Bogart heirs parties, then plaintiff would be in a much better position to litigate with defendant lessee the question of ownership resulting from his showing of title as determinative *vel non* of his right of possession as against the said lessee, than he is now.

It is, therefore, ordered that the former decree of this court remain undisturbed, costs of this appeal to be borne by plaintiff and appellee, those of the lower court to abide the final result of the suit.