Statement of the Case.
MONROE, J.
Plaintiff alleges that he is a son and forced heir of Samuel Wilson, deceased, and-Eliza Jane Wilson, his wife, and that the estate of the latter, of which he is the administrator, consists, in part, of a seven-twelfths interest in a certain improved lot of ground on St. Andrew street, which had been purchased by Samuel Wilson, as community property, June 6, 1860; that the defendant, whilst pretending to act as the agent of the estate and heirs of Mrs. Wilson, and without notice to his principals, took possession of said lot under a pretended title from George W. Wilson, one of the heirs, in the form of a notarial act, of date April 30,1900; that the attempt on the part of said *719 Ober thus to acquire said property is a fraud upon the rights of the petitioner, of the estate of which he is administrator, and of his coheirs, as said Ober knew that the same belonged, before the death of Samuel Wilson, to the community existing between him and his wife, and, after the death of said parties, to their estates, and that said Ober is estopped to assert any claim of ownership thereto. Plaintiff further alleges that the lot in question was unimproved when purchased; that Samuel Wilson placed improvements thereon which, after his death, were kept insured in the name of his estate; that said improvements were destroyed by fire in 1886, and the amount of the loss adjusted at $2,000, and paid, through petitioner, to the estate of Samuel Wilson and Mrs. Eliza Jane Wilson, widow and usufructuary, all of which was well known to defendant and to George W. Wilson, who made no objection thereto, and that, since then, and as late as 1900, the defendant has kept said improvements, which were rebuilt, insured in the name of the estate of Samuel Wilson. He further alleges that the defendant collected rents from said property in the name of said estate, and accounted for the same to the widow and usufructuary, and that, after her death, he collected such rents in the name of the estate of Samuel Wilson and wife, and accounted for the same to the estate of the latter up to the time of his attempt to dispossess it of the property. He further alleges that defendant knew that George W. Wilson never owned or claimed to own the property in question, and that the pretended sale by him to the defendant was a scheme concocted for the purpose of defrauding plaintiff and his coheirs; that the defendant has, since said pretended sale, collected and retained the rents of said property, and that petitioner fears that he may waste or convert them to his own use. He, therefore, prays that they be sequestered, that the defendant be cited, and his pretended title decreed an absolute nullity, and that it be further decreed that the property in question belonged to the estate of Samuel Wilson and Mrs. Eliza Jane Caldwell, his widow, now deceased, and now belongs to their heirs and successors and that the defendant be condemned for the rents collected by him and not accounted for. The writ of sequestration issued as prayed for, and thereafter the defendant excepted: That the petition discloses no cause of action; that the plaintiff is without capacity to maintain this suit; that the heirs of Samuel Wilson and his wife are necessary parties; and that the allegations of the petition are vague and inconsistent; which exceptions were referred to the merits, save the exception of no cause of action, which was overruled. The defendant, having, in the meanwhile, obtained the release of the sequestration by giving bond, then answered, in substance, as follows:
He admits that the i>laintiff is a son and forced heir of Samuel and Eliza Jane Wilson, and is the administrator of the estate of the latter, and that said estate owns a seven-twelfths interest in all the property still in existence which belonged to the community at the date of the death of the husband, but he alleges that the property here claimed was acquired June 6, I860, by George W. Wilson, then a minor, represented by his father, Samuel Wilson, by purchase from Samuel Boal, for $1,200, cash, and that it was acquired by defendant, in good faith, from George Wilson, by act of purchase, of date April 30, 1900; and he denies that said property, or the improvements thereon, .ever belonged to the estate of Samuel Wilson, or to that of his widow. He especially denies the charge of fraud, and further alleges that, if the conveyance to George W. Wilson was not good as a sale, it was good as a donation, and is not subject to collation, and he pleads the prescription of from 1 to 30 years, and concludes by calling George W. Wilson in warranty.
George W. Wilson, called in warranty, concurs in the defense set up by Ober, and alleges that his mother never asserted any claim of ownership with respect to the property in controversy, but, on the contrary, always recognized him as the owner of the same.
In addition to these pleadings, we find in the record the following, to wit:
“Counsel for defendant having called upon counsel for plaintiff to elect upon what ground his claim is predicated, counsel for plaintiff now states that this action is intended, and asks the court to construe it, as a petitory action, same being a claim by the estate of Mrs. Eliza Jane Wilson and Samuel Wilson for recognition as owners of the *721 property in controversy, said action being predicated upon the following averments: That tbe said property in contest was acquired by Samuel Wilson, by purchase from Samuel Boal, by act before John E. Coffey, late Notary Public, on the 6th day of June, 1860; that the said property has been continually, ever since said sale, in the possession of the said Samuel Wilson and of his widow, Mrs. Eliza J. Wilson, who have collected the rents of said property and paid the taxes thereon; that Samuel Wilson caused the buildings to be erected on said property, a vacant lot at the time of said purchase in 1860; that the said buildings were insured in the name of estate of Samuel Wilson, and, when destroyed by fire, the amount received from the insurance companies was expended in replacing said buildings; that the said George W. Wilson has constantly resided in the city of New Orleans, and has never made any claim to the ownership of said premises until a short while prior to the institution of this suit; that he has never been in possession of said property, either physically or civilly, by exercising any of the rights of owner; that Ered A. Ober, who claims to have acquired title from George W. Wilson, acted for several years as the agent of Mrs. Eliza Jane Wilson, widow of Samuel Wilson and usufructuary of his estate; that he caused the property to be insured as the property of the estate of Samuel Wilson; that he paid taxes thereon in the name of estate of Samuel Wilson; that lie collected rents from the tenants of said property and gave receipts in the name of Samuel Wilson, and accounted to Mrs. Eliza Jane Wilson for said amounts so collected by him; that said Ered A. Ober also canceled the policy of insurance on said property in the name of the estate of Samuel Wilson, and collected the returned premiums, for which he has failed to account to the administrator.”
“By Mr. Brewer (counsel for defendant): I ask that these long details of this petition be stricken out, and that the gentleman answer the proposition put to him, as to where he stands and upon what grounds. He can do it shortly, without going into all these reiterations of what assertions he makes in his petition.
“By Mr. Rosser (counsel for plaintiff): Plaintiff predicates his action upon all the averments made in his petition, save those which charge that the title acquired by Ober from George W. Wilson is a simulation and a fraud; the allegation of fraud being restricted to the knowledge on the part of the defendant that, when he acquired title from George W. Wilson, the said George W. Wil son had no title to the property which he purported to transfer or sell.”
There are also some admissions as to the facts, from which, and from the testimony adduced, it appears that, in June, 1860, Samuel Boal sold the property here claimed, and at that time described as “a certain lot of ground with the improvements thereon, right, ways, and appurtenances,” etc., to the minor George W. Wilson, represented by his father, Samuel Wilson, who, in the name and on behalf of his son, paid therefor the sum of $1,200, in cash. Considering the terms of the description and the price paid, in connection with such oral testimony upon the subject as is to be found in the record, it cannot be doubted that the property was improved at, and prior to, the date of this sale, and it is shown that, at least during the years 1861, 1802, and 1S64, it was assessed, for drainage purposes, in the name of the minor. The record is, however, silent as to the source from which the purchase price was derived.
In 1866 Samuel Wilson died, leaving an estate, acquired under the regime of the community, consisting largely of immovable property, and valued at over $72,000, the inventory of which, taken under the direction of his son and executor, John Wilson, did not include the property in question. The widow in community and heirs were put in possession by judgment of court, the latter subject to the usufruct of the former, which usufruct continued until the death of Mrs. Wilson, March 24, 1900. The minor George W. Wilson was about 12 years of age when his father died, and after that event his mother administered and otherwise dealt with the property here claimed, just asv she administered and dealt with the property of the community.
It seems probable that for some years the affairs of the widow were managed by her son John, but he died, and, perhaps as far back as 1876, they were placed in the hands of her son James, the plaintiff in this suit, *723 who managed them until 1896, when her son-in-law, the defendant, at her request, took charge. During the administration of the plaintiff, the property in dispute was assessed, insured, etc., in common with a number of other properties, more or less similar, but actually belonging thereto, as the property of the estate of Samuel Wilson, though the evidence shows that Mrs. Wilson, who, during that time, and, probably from the date of her husband’s death, had the title in her possession, frequently spoke of it as George’s property, not only in the presence of George Wilson and of the defendant and his family, but, certainly, to one other person, i. e., a bricklayer and plasterer whom she employed from time to time to make repairs. It is also shown that there was an understanding between her and her son, George, to which she also referred in her conversations with the members of the defendant’s family, to the effect that matters should remain as they were, and that she should enjoy the usufruct of the property now in dispute, as of the community property, until her death. When, therefore, in May or June, 1896, the defendant succeeded the plaintiff as agent, and, for the first time, by actual inspection, learned the exact nature of the title here attacked, whilst he called the attention of Mrs. Wilson to the fact that this particular property was incorrectly assessed, and also called the attention of the assessors to it, he did not insist that any change should be made, and the property continued to be assessed and insured as it had been during the agency of the plaintiff.
After Mrs. Wilson’s death, March 24, 1900, there was a meeting of the heirs, or their representatives, at which it was agreed that the plaintiff, as the eldest son, should apply for the administration of the estate, and, at his request, the defendant consented, in the meanwhile, to continue to collect the rents and otherwise look after the property.
Upon April 30, 1900, George W. Wilson transferred the property in question to the defendant by act before John J. Ward, Notary, which was registered in the conveyance office on the same day, the consideration being stated as follows: “This sale is made and accepted for and in consideration of the price and sum of $1,800. Whereas the present vendor was indebted unto the aforesaid purchaser in the sum of $4,300, borrowed money had and received by him in various amounts and at different times, and whereas the said vendor has preferred to transfer the herein described property unto the said present purchaser at the aforesaid price or sum of $1,800, which is to be credited on his aforesaid indebtedness: Now, therefore, the said purchaser hereby gives and grants the aforesaid vendor a release and discharge up to the amount of $1,800 on account of the aforesaid indebtedness, wherewith the said vendor hereby declares himself contented and satisfied in the premises, and grants said purchaser a full release and discharge from the said purchase price of the herein described property.”
There was no concealment about this transaction, nor is it suggested that George W. Wilson did not owe the defendant the amount, or that the transfer of the property was made for any other purpose or consideration than as stated in the act. Shortly after this act was passed, however, the inventory, which the plaintiff had caused to be made of the property of the succession of Mrs. Wilson, was filed, and it was found that it included the property which had thus been transferred, and thereupon George W. Wilson and the defendant, as, also, Miss Ober, granddaughter and heir of Mrs. Wilson, by representation of her mother, protested that the property did not belong, and had never belonged, to the estate, and requested 'that it be stricken from the inventory, which request was denied.
In the meanwhile, up to June 7, 1900, the defendant had continued to collect the rents from the several properties belonging to the estate, and, also, as he had been accustomed to do, collected the rent from the property in question, and, upon the date mentioned, he rendered an account to the plaintiff, as administrator, and turned over to Mm a balance, resulting from such collections, amounting to $53.91, as having been collected for account of the estate of Samuel Wilson and of Eliza J. Wilson, as usufructuary. Beyond this, the record shows that, at some time prior to the death of Mrs. Wilson, the plaintiff purchased the interest of one of his coheirs in his father’s succession, and whilst, as we understand the testimony, the various *725 pieces of real estate which were understood to belong to that succession were described in the act by which he acquired, the particular piece here in question was not so included or described. It also shows that, prior to the institution of this suit, the heirs of Mrs. Wilson, including the plaintiff, made an amicable, extrajudicial partition of the movable property belonging to the estate; and it does not show that, in the prosecution of this suit, the plaintiff is acting by any other than his own authority. On the contrary, so far as the heirs have been heard from, they deny having authorized it.
Opinion.
There is no intimation in the petition, or elsewhere in the record, that the succession of which plaintiff is the administrator owes any debts, and the plaintiff does not profess to be acting in the interest of creditors. Upon the other hand, the heirs, so far as they are known, having divided among themselves the movable property of, may be considered as having accepted, the succession, and it is not shown that any of them have authorized the institution of this suit. Under these circumstances, and considering the character of the title attacked, it follows that the plaintiff has a standing in court only to the extent of his individual interest. Woodward v. Thomas et al., 38 La. Ann. 238; Executors of Carroll v. Castleman and Wife, 47 La. Ann. 1364, 17 South. 862.
But, though this is a petitory action, for the revendication of property alleged to be in the possession of a person claiming title thereto, the plaintiff discloses no title whatever in himself, and, under the text of the law, as well as the jurisprudence of this court, he cannot recover. Code Prac. art. 44; Huntington v. Bordeaux, 42 La. Ann. 350, 7 South. 553; Byrne v. Hebert, 51 La. Ann. 557, 25 South. 586.
The allegations of bad faith, fraud, etc., predicated upon the theory that the defendant, whilst acting as the agent of some one claiming to be the owner, undertook to acquire an adverse interest in the property so claimed, seem to us to have been abandoned by the judicial averment, or admission, quoted in the statement of the case — “the allegations of fraud being restricted to the knowledge on the part of the defendant that, when he acquired title from George W. Wilson, the said George W. Wilson had no title to the property which he purported to transfer or sell.”
Dealing with that question alone, it is evident that the defendant could never have had the knowledge attributed to him, since the uncontroverted fact is that the title to the property in dispute was vested in George W. Wilson, and in no one else, and the allegation in the petition that it was purchased by Samuel Wilson was made in error, and had no other foundation than that Samuel Wilson acted in the matter for, and as the representative of, George W. Wilson, his minor son. Whether the money used belonged to the minor, as having been derived from some other source, or because his father thereby intended to make a donation to him, does not appear, and is wholly immaterial for the purposes of this ease. Apart from this, however, the case is not one of an agent’s discovering a defect in the title of property claimed by his principal and making-use of the discovery for his own purposes. The defendant and his family had lived in the house with Mrs. Wilson for 25 years or more, and, for the several years immediately preceding her death, he had acted as her agent, and he knew, and could not have failed to know, that she could not, and did not, claim to be the owner of the property in question. She was the mother of George W. Wilson, and she must have known, and did know, not only that the title was vested in him, but why it was so vested. When, therefore, the defendant insured the property and collected the rents therefrom, and otherwise dealt with it during Mrs. Wilson’s life as he did with various other pieces of property, of which she was owner and usufructuary, it was only as a matter of convenience, and because his predecessor, the plaintiff, had done so before him, and not because either he or his principal regarded it as her property; and the situation was not changed by her death, nor up to the time that he acquired the property from the owner, since, up to that time, it had not been claimed by anyone on behalf of the succession or heirs.
George W. Wilson attained majority in 1875, and he testifies that after that time he did not choose to disturb his mother, who was very old, with respect to a usufruct *727 which she had enjoyed for many years, and so allowed matters to stand as they were urn-til her death, with the understanding, however, that the property belonged to him and would go into his possession after that event.
But, so far as we can see, it would have made no difference if there had been no understanding, since the title was vested in him, and it is not asserted that it was prescribed against when his mother died.
The account rendered in June, 1900, by the defendant to the administrator of Mrs. Wilson’s succession begins with the collections of December, 1899, and embraces all rents collected up to the date at which it was rendered, including rents of the property herein claimed for the months of April and May, 1900. The defendant thus accounted to the administrator for a small amount of money to which the latter was not entitled, but which, having been collected as the defendant had been in the habit of collecting it, was accounted for in the same way.
This was, at most, an error, which affects neither the defendant’s good faith nor the title to the real estate in controversy.
Eor these reasons, we are of opinion that there should be judgment for the defendant, and, as he so prays in his answer to the appeal, that his right to claim damages resulting from the issuance of the writ of sequestration should be reserved.
It is, therefore, ordered, adjudged, and decreed that the judgment appealed from be amended by including therein a reservation to the defendant of the right to sue for such damages as he may have sustained by reason of the issuance of the sequestration herein, and that, as amended, said judgment be affirmed, the plaintiff and appellant to pay all costs.